[Cite as *State v. Scarton*, 2021-Ohio-7.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

STATE OF OHIO,                           :

    Plaintiff-Appellee,          :

                                   No. 108474

    v.                           :

APRIL SCARTON,                           :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** APPLICATION DENIED
**RELEASED AND JOURNALIZED:** January 5, 2021

---

Cuyahoga County Court of Common Pleas
Case No. CR-18-633062-A
Application for Reopening
Motion No. 541609

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Frank Romeo Zeleznikar, Assistant Prosecuting Attorney, *for appellee.*

April B. Scarton, *pro se.*

EILEEN A. GALLAGHER, J.:

{¶ 1} On October 5, 2020, the applicant, April Scarton, pursuant to App.R. 26(B) and *State v. Murnahan*, 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992), applied to reopen this court's judgment in *State v. Scarton*, 8th Dist. Cuyahoga No. 108474,

2020-Ohio-2952, in which this court affirmed her conviction for murder.[1] Scarton now argues that she was really guilty of vehicular homicide and should have been sentenced accordingly. On October 7, 2020, the state of Ohio filed its brief in opposition and Scarton filed a reply brief on November 5, 2020. For the following reasons, this court denies the application.

## Factual and Procedural Background

{¶ 2} Melissa Lang's death occurred during a violent altercation that arose from two distinct incidents among friends. Anthony and April Scarton were married to each other. Melissa Lang and Eric Clary were engaged. Clary and Anthony had been friends for 20 years.

{¶ 3} On Friday, September 21, 2018, April babysat Lang and Clary's young son for about three hours. April noted that the boy did not engage well, was not walking, crawling, or talking and was very thin. After she returned the child to Lang and Clary, April called 696-Kids and reported the matter to the Cuyahoga County Division of Children and Family Services. Subsequently, April and Lang exchanged heated, vulgar and threatening text messages. April eventually "blocked" Lang.

---

[1] A jury convicted her of two counts of murder and two counts of felonious assault. All four counts merged as allied offenses, and the prosecution elected to proceed on count one, Murder under R.C. 2903.02(A). The trial court sentenced her to 15 years to life.

Because of the Supreme Court of Ohio's April 14, 2020 tolling order, this court rules that Scarton timely filed her application.

{¶ 4}  During that same weekend Anthony, with the family dog, visited Clary.  During that visit, the dog bit Clary and Clary kicked the dog, allegedly injuring it.  The men came close to fighting, and the argument continued over the weekend.

{¶ 5}  On Monday, September 24, 2020, April, Anthony and a friend drove to Lang's house, with the intention of determining what Clary would do to compensate Clary for injuring the dog.  Anthony and the friend went to the house, hitting on the front door and windows demanding Clary come outside.  Clary exited the house through the side-door swinging an aluminum baseball bat and chased the two men back to their car.  At the same time, Lang exited the home and confronted April who was in the car.  Lang grabbed April's hair and punched her several times through the open driver-side window.

{¶ 6}  Anthony and the friend got back in the car and Clary broke the two rear lights as well as the back window of the car.  Lang started to run for the house, but April drove the car onto the lawn and ran her over.  Four witnesses testified that the vehicle targeted Lang.  She was running away for safety and April turned the car towards her and ran over her.

{¶ 7}  April testified that after several punches, she was seeing stars and did not recall much of what happened and did not remember striking Lang.  She testified that she remembered Anthony helping her steer the car down the street.  After consulting with their attorney, they drove to a police station to report the damage to their car.  Based on reports from the crime scene, the police arrested April, Anthony and their friend.

{¶ 8} During opening statement, defense counsel proposed that Lang's death was the result of a tragic accident. Trial counsel sought jury instructions for vehicular homicide and accident, but the trial judge declined that request. The state sought instructions for the lesser included offenses of voluntary manslaughter and aggravated assault, but the judge, upon defense counsel's objection, declined to provide those instructions as well.

{¶ 9} Scarton's appellate attorney argued the following: (1) The verdict was not supported by sufficient evidence. (2) The verdict was against the manifest weight of the evidence. (3) Defense counsel was ineffective for eliciting incriminating hearsay evidence from Sgt. Jackson as well as the officer the Scartons talked to when they went to the police station; he testified that the officers on the scene indicated that the Scartons were the people who killed Lang. (4) Defense counsel was ineffective for failing to object to Officer Garcia's testimony that April made incriminating statements during an argument with another cellmate. (5) The trial court erred by denying the state's request for jury instructions on voluntary manslaughter and aggravated assault. (6) Defense counsel was ineffective for objecting to the state's request for voluntary manslaughter and aggravated assault instructions. (7) The trial court erred by denying defense counsel's request for a jury instruction on accident. (8) The trial court erred by excluding relevant evidence of Clary's drug use and Lang's text messages to other people during that weekend. Scarton now argues that her appellate counsel was ineffective.

**Discussion of Law**

{¶ 10} In order to establish a claim of ineffective assistance of appellate counsel, the applicant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989); and *State v. Reed*, 74 Ohio St.3d 534, 1996-Ohio-21, 660 N.E.2d 456.

{¶ 11} In *Strickland*, the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689.

{¶ 12} Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one

central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the court ruled that judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective advocacy. The Supreme Court of Ohio reaffirmed these principles in *State v. Allen*, 77 Ohio St.3d 172, 1996-Ohio-366, 672 N.E.2d 638.

{¶ 13} Moreover, even if a petitioner establishes that an error by his lawyer was professionally unreasonable under all the circumstances of the case, the petitioner must further establish prejudice: but for the unreasonable error there is a reasonable probability that the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court need not determine whether counsel's performance was deficient before examining prejudice suffered by the defendant as a result of alleged deficiencies.

{¶ 14} It is difficult to discern exactly what Scarton is arguing. She states her sole assignment of error as follows: "The trial court's prison sentence for Murder is contrary to law because the full facts and circumstances surrounding the actual crime mitigate the charge to that of vehicular homicide, according to definition, pursuant to the Ohio Revised Code, §2903.06." She frames the issue as a sentencing error, when she seems to be really arguing that the judge should have directed a

verdict for vehicular homicide. Alternatively, she could be arguing that trial defense counsel should have asked for, and argued vehicular homicide, or she could be arguing that her appellate counsel should have argued that it was error for the trial judge not instruct the jury on vehicular homicide. Other parts of her application indicate that she is arguing that the prosecutor overcharged her with murder, when he should have sought a conviction for vehicular homicide. Furthermore, she submits that Sergeant Jackson testified that he was at the scene of the crime when he was not.

{¶ 15} To the extent that she is arguing that the trial judge should have directed a verdict for vehicular homicide, her argument is ill-founded. Her appellate counsel argued that there was insufficient evidence of murder and that the verdict was against the weight of the evidence. This court examined the trial record and concluded that the evidence supported a conviction for murder. Without clearing that threshold hurdle, arguing that she committed only vehicular homicide is illusory.

{¶ 16} Her trial counsel did ask for an instruction on vehicular homicide but the trial judge denied the request. Thus, trial counsel was not ineffective for not arguing this point. Moreover, it appears that the defense strategy was an "all or nothing" strategy, arguing that the incident was a tragic accident and objecting to the lesser included offense of voluntary manslaughter. Following the admonition of the Supreme Court, this court will not second-guess the trial strategy.

{¶ 17} Similarly, appellate counsel considered arguing the failure to instruct on vehicular homicide. However, because *State v. Rivers*, 10th Dist. Franklin No. 98AP-1322, 1999 Ohio App. LEXIS 3430 (July 27, 1999) held that vehicular homicide is not a lesser included offense of murder, he concluded that the argument had little chance of success. Instead, he argued that the trial judge erred by not instructing on accident. Again, following the admonition of the Supreme Court, this court will not second-guess counsel's professional judgments on strategy and tactics.

{¶ 18} Finally, the court has reviewed Sergeant Jackson's testimony. It is clear that he testified that he was not at the scene of the crime but, rather, at the police station with the Scartons and their friend. Furthermore, appellate counsel argued that his testimony introduced impermissible hearsay evidence.

{¶ 19} Accordingly, this court denies the application to reopen.

_____
EILEEN A. GALLAGHER, JUDGE

SEAN C. GALLAGHER, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR